UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: **20-22832-CIV-MORENO**

TOWN KITCHEN LLC, individually and on
behalf of those similarly situated,

        Plaintiff,

vs.

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON KNOWN AS SYNDICATE ENH
5151, NEO 2468 XLC 2003, TAL 1183, TRV
5000, AGR 3268, ACS 1856, NVA 2007,
HDU 382, PPP 1980, AMA 1200, ASC 1414
AND VSM 5678; INDIAN HARBOR
INSURANCE COMPANY; and HDI
GLOBAL SPECIALTY SE,

        Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendant's Motion to Dismiss **(D.E. 15)**, filed on **August 20, 2020**.

THE COURT has considered the motion, the response in opposition, the reply, supplemental authorities, and pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is **GRANTED**.

**I.**     **Background**

This suit is one of many in a long line of insurance disputes stemming from the COVID-19 pandemic and its related effects on businesses. Plaintiff Town Kitchen, LLC operates a restaurant at 7301 SW 57th Court, Suite 100, South Miami, Florida 33143. Defendant Certain

Underwriters at Lloyd's, London issued all-risk commercial property insurance policy AVS011418900 to Plaintiff. Plaintiffs submitted an insurance claim, and on July 7, 2020, Defendants denied the claim. Now Plaintiff sues for breach of contract and a declaratory judgment.

The following facts are accepted as true at this stage in the litigation. As an aside, the parties do not materially contest the facts—the dispute is principally a legal one. Plaintiffs allege that the policy at issue is an "all-risk" policy, which covers loss or damage to the covered premises resulting from all risks other than those expressly excluded. The Policy includes "business interruption coverage," which "promises to indemnify the insured for lost income and certain expenses in the event of a business interruption." More specifically, each Policy includes a "Business Income (and Extra Expense) Coverage Form," which provides coverage for "Business Income" and "Extra Expense," as well as additional coverage for actions taken by a "Civil Authority."

The Policy has several sections relevant to this litigation. They are recounted here before the Court moves to legal analysis.

> **A. Coverage**
> **1. Business Income**
> \*\*\*
> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" **must be caused by direct physical loss of or damage to property at premises** which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

**D.E. 6-1 at CP 00 30 10 12 p. 1.** (emphasis added). According to the Policy, "covered cause of loss means **direct physical loss** unless the is excluded or limited in this Policy." **D.E. 6-1 at CP 10 30 09 17, p. 1.** (emphasis added). This is the most important part of the Policy because it

describes what event would trigger the remainder of the Policy in the first instance. There is also a coverage extension for actions by a Civil Authority.

> When a **Covered Cause of Loss causes damage to property other than property at the described premises**, we will pay for the actual loss of Business Income you sustain caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken **in response to dangerous physical conditions** resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

**D.E. 6-1 at CP 10 30 09 17, p. 1-2.** (emphasis added). The key question is: What constitutes a "direct physical loss"? No matter what it is, it is a prerequisite for coverage under either the Business Income provision or the Civil Authority provision.

Therein lies the true dispute. Plaintiffs argue that the effects of COVID-19 and the various government responses are direct physical losses and/or actions taken by Civil Authorities that trigger Defendants' obligation to pay out on the Policy. Defendants on the other hand argue that no property loss or damage has even occurred, and Plaintiffs cannot plausibly state a claim for relief because Town Kitchen is left physically unchanged.

Finally, Defendants argue that even if Plaintiff could establish an affirmative right to coverage by plausibly alleging that COVID-19 was physically present at Town Kitchen, coverage is barred by the "Pollution Exclusion." The Policy contains an exclusion for loss or damage caused by or resulting from "[d]ischarge, dispersal, seepage, migration, release or escape of 'pollutants.'" Pollutants is not defined in the Causes of Loss form, but is defined in the Business Income (And Extra Expense) Coverage Form as "any solid, liquid, gaseous or thermal irritant or contaminant,

3

including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." **D.E. 6-1 at p. 45, CP 00 10 10 12.**

II. **Legal Standard**

To state a claim, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While the Court must consider the allegations contained in the plaintiff's complaint as true, this rule "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In addition, the complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw upon its judicial experience and common sense. *Id.* at 679, 129 S.Ct. 1937. A court may dismiss a case with prejudice if the allegations of a complaint, even when taken as true, afford no basis for relief or when amendment

4

would be futile. *E.g.*, *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999); *Chiron Recovery Ctr., LLC v. United Healthcare Servs., Inc.*, 438 F. Supp. 3d 1346, 1356 (S.D. Fla. 2020)

**III. Analysis**

A. Florida Contract Law Principles

Florida law governs interpretation of the policy. As such, a court's inquiry begins with the plain language of the policy. *Auto–Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). Insurance contracts are construed according to their plain meaning. *Garcia v. Federal Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006). However, where the language is "susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is considered 'ambiguous,' and must be 'interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy.'" *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) (internal citation omitted). Although the Court later holds the policy does not cover Plaintiff's claims, it is reasonable to understand the "direct physical loss or damage to the premises" language as covering COVID-19 harms. Several state and federal courts (although none in Florida) have found that way and it would be wrong to say those decisions were wholly irrational.

"[I]nsurance coverage must be construed broadly and its exclusions narrowly." *Evanston Ins. Co. v. Budget Grp. Inc.*, 199 F. App'x. 867, 868 (11th Cir. 2006) (citing *Demshar v. AAACon Auto Transport, Inc.*, 337 So. 2d 963, 965 (Fla. 1976)). Similarly, policies "are to be construed most strongly against the insurer and liberally in favor of the insured." *Id.* (citing *Hartnett v. Southern Ins. Co.*, 181 So.2d 524, 528 (Fla. 1965)). Therefore, exclusionary clauses restricting the insured's coverage are generally disfavored. *Hartford Acc. & Indem. Co. v. Beaver*, 466 F.3d 1289, 1296 (11th Cir. 2006) (citing *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1359 (M.D.

5

Fla. 2001)). The burden falls on the insurer to prove that an exclusionary clause precludes coverage, and it must do so by "demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation." *Id.* (citing *Northland*, 160 F. Supp. 2d at 1359); *see also U.S. Concrete Pipe Co. v. Bould*, 437 So. 2d 1061, 1065 (Fla. 1983) ("Non-insurability is a defensive matter, with the burden resting on the insurer.").

All-risk insurance policies (like this one) cover all "fortuitous" losses, "unless the policy contains a specific provision expressly excluding the loss from coverage." *Great Lakes Reinsurance (UK) PLC v. Kan-Do, Inc.*, 639 F. App'x 599, 601 (11th Cir. 2016). In order to recover under an all-risk insurance policy, the insured must first show (1) a fortuitous loss (2) that occurred during the policy period. *Id.* Once the insured meets the light burden of establishing that a loss occurred due to some fortuitous event or circumstance, the burden shifts to the insurer to show that the loss is excluded by some language set out in the policy. *Id.* "However, as the Florida Supreme Court has noted, an 'all-risk' policy is not an 'all loss' policy, and thus does not extend coverage for every conceivable loss." *Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 878 (11th Cir. 2020) (citing *Sebo v. Am. Home Assurance Co.*, 208 So. 3d 694, 696-97 (Fla. 2016)).

B. What is a "Direct Physical Loss of or Damage to"?

Many courts—both state and federal, within and outside this District—have considered this question in relation to COVID-19 litigation. The weight of the federal court rulings is against the Plaintiff. Federal courts in Florida, Texas, Georgia, California, Alabama, West Virginia, Kansas, Iowa, New York, and Illinois have found no coverage for COVID-19 losses under this insurance policy or similar ones. On the other hand, federal courts in Ohio and Virginia have found in favor of Plaintiffs, as have state courts in North Carolina, Washington, and Nevada.

6

Plaintiff argues the plain, dictionary definition of "direct physical loss of or damage to property" is reasonably interpreted to include "the diminution in value of something material," "harm that actually reduces value or usefulness," "actual loss of possession," or the "actual loss of something."

To arrive at this meaning, Plaintiff reasons that the use of the disjunctive "or" means that "loss of" and "damage to" must mean different things. So, first, "loss of" means losing possession (according to Miriam-Webster) and the diminution of value according to Black's Law Dictionary. Second, "damage," according to Merriam-Webster, is loss or harm resulting from injury to person, property, or reputation. Finally, the above must be caused directly by something "physical," which Plaintiff defines to mean "having material existence."

Plaintiff proffers two theories under which it prevails. First, Plaintiff alleges its restaurant became unsuitable for its intended purpose (dine-in facility, bar, event space) due to the high risk of transmission of *physical* coronavirus inside the premises. The Court will refer to this as the "loss of use" theory. Second, Plaintiff alleges it is statistically certain that coronavirus particles were present at its property. Their *physical* presence on tables, countertops, etc., directly and physically damaged Plaintiff's property. The Court will refer to this as the "physical contamination theory."

i. Loss of Use Theory

As the vast majority of federal courts around the country and all courts within this district have held, Plaintiff fails to state a claim under this loss of use theory. Put simply, courts reject this theory because it is an attempt to recover for **economic losses that happen to be caused by something physical** (e.g., the coronavirus particles), rather than a "direct physical loss." Judge Ungaro pointed to a similar, albeit non-COVID, insurance dispute decided by Chief Judge Moore when she rejected a restaurant's suit against its insurance company for denying a COVID claim.

7

*El Novillo Rest. v. Certain Underwriters at Lloyd's, London*, No. 1:20-CV-21525-UU, 2020 WL 7251362 (S.D. Fla. Dec. 7, 2020). Judge Ungaro agreed with Chief Judge Moore that the term "direct physical loss contemplates an *actual change* in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so." *Id.* at *5 (emphasis in original). Judge Moore went on to explain that

> The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.

*Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-CV-23362-KMM, 2018 WL 3412974 (S.D. Fla. June 11, 2018), *aff'd*, 823 F. App'x 868 (11th Cir. 2020). In its affirmance of Chief Judge Moore's ruling, the Eleventh Circuit noted that even if the plaintiff had shown harm to their bottom line, they did not show that they suffered a direct physical loss or damage to their property. *Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868 (11th Cir. 2020). Clearly, the economic losses caused by periods of reduced or no operations are intangible losses that do not result in a changed physical structure. Under their loss of use theory, Town Kitchen is attempting to shoehorn their losses stemming from the inability to use their restaurant at full capacity into something covered by their insurance policy merely because they are caused by a physical virus—but coronavirus particles damage lungs, they do not damage buildings.

In my opinion, the key difference between the Plaintiff's loss of use theory and something clearly covered—like a hurricane—is that the property did not change. The world around it did. And for the property to be useable again, no repair or change can be made to the property—the world must change. Even if a cleaning crew Lysol-ed every inch of the restaurant, it could still not

8

host indoor dining at full capacity. Put simply, Plaintiff seeks to recover from economic losses caused by something physical—not physical losses. These facts are more akin to a zoning change, loss of liquor license, or Miami Hurricanes championship parade blocking Red Road—intangible business operations are affected, but the physical structure remains the same (again, under the loss of use theory).

Other courts agree. "A growing number of state and federal courts in Florida and around the country have considered the issue and have almost uniformly held that economic losses resulting from ... COVID-19 are not covered under 'all risk' policy language identical to that in this case because such losses were not caused by direct physical loss of or damage to the insured property." *Emerald Coast Restaurants, Inc. v. Aspen Specialty Ins. Co.*, No. 20-cv-5898, 2020 WL 7889061, at *2 (N.D. Fla. Dec. 18, 2020); *see .e.g.*, *Carrot Love, LLC v. Aspen Specialty Ins. Co.*, No. 20-23586-CIV, 2021 WL 124416 (S.D. Fla. Jan. 13, 2021) (Scola, J.); *see also MENA Catering, Inc. v. Scottsdale Ins. Co.*, No. 20-cv-23661, 2021 WL 86777, at *7 (S.D. Fla. Jan. 11, 2021) (Bloom, J.) ("There is no 'direct physical loss' where the alleged harm consists of the mere presence of the virus on the physical structure of the premises.") (discussing *Mama Jo's, Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 879 (11th Cir. 2020)); *see also Sun Cuisine, LLC v. Certain Underwriters at Lloyd's London*, No. 20-cv-21827, 2020 WL 7699672, at *4 (S.D. Fla. Dec. 28, 2020) (Gayles, J.) ("Plaintiff's allegations provide the Court no reason to deviate from the prevailing consensus in this Circuit and others regarding business interruption claims arising from the COVID-19 pandemic" that such claims "do not plausibly show direct physical loss or damage" to property); *see also El Novillo Restaurant v. Certain Underwriters at Lloyd's London*, 20-cv-21525, 2020 WL 7251362, at *6 (S.D. Fla. Dec. 7, 2020) (Ungaro, J.) (collecting cases and noting "federal district courts through the country have dismissed substantially similar COVID-19 related

9

lawsuits for failing to state a claim for business income coverage" where the policy required proof of "direct physical loss of or damages to property."); *see also Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, No. 20-cv-22833, 2020 WL 6392841 (S.D. Fla. Nov. 2, 2020) (Bloom, J.) (same); *see also Malaube, LLC. v. Greenwich Ins. Co.*, 20-22615-Civ, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020) (Torres, Mag. J.) (same).

Although the Plaintiff cites to a few federal and state court victories by insureds in similar cases, those cases come from outside of this jurisdiction and not nearly numerous enough as to outweigh the cases Defendant cites from over fifteen federal courts across the country. For example, most recently, Plaintiff cites Judge Edmond Chang's opinion in a COVID-19 business insurance MDL.[1] Judge Change endorsed the loss of use theory because "Plaintiffs cannot use (or cannot fully use) the physical space." *Id.* at *9. The Court went on to reason that the loss is "physical" because "[i]f the restaurant could expand its *physical* space, then the restaurant could serve more guests and the loss would be mitigated (at least in part)." *Id.* Judge Chang's opinion does not address any Eleventh Circuit authorities, and this Court respectfully disagrees that such loss would be considered "physical" under the Florida and Eleventh Circuit law. Accordingly, the Court finds the Plaintiff has **failed to adequately state a claim** for breach of contract or declaratory judgment under its loss of use theory because it does not make a prima facie case of coverage under the Policy.

    ii.    <u>Physical Contamination Theory</u>

---

[1] *IN RE: SOCIETY INSURANCE CO. COVID-19 BUSINESS INTERRUPTION PROTECTION INSURANCE LITIGATION This Document Relates to the Following Cases: VALLEY LODGE CORP., Plaintiff, v. SOCIETY INSURANCE, a Mut. Co., Defendant. RISING DOUGH, INC. (d/b/a MADISON SOURDOUGH), et al. individually & on behalf of all others similarly situated, Plaintiffs*, No. 20 C 02005, 2021 WL 679109 (N.D. Ill. Feb. 22, 2021)

Unlike some other plaintiffs, Town Kitchen alleges not just that COVID-19 caused it to lose business, but that the virus was actually, physically present inside its premises.[2] The complaint acknowledges that Plaintiff cannot be certain that the virus was present at the restaurant because there is no test that can detect the virus on surfaces. However, it alleges, the virus was so prevalent in the community it is a virtual certainty that the virus was on the premises at some point.[3]

Various courts have addressed this theory before. One federal judge in Missouri has twice held that an allegation that the virus was at the insured's premises was sufficient to state a claim for breach of contract under a substantially similar insurance policy. *Blue Springs Dental Care, LLC et al. v. Owners Ins. Co.*, No. 20-CV-00383-SRB, 2020 WL 5637963 (W.D. Mo. Sept. 21, 2020); *Studio 417, Inc. v. The Cincinnati Ins. Co.*, No. 20-cv-03127, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020). Other federal courts have ruled the opposite way. One Judge wrote that "coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property," and thus dismissed the complaint. *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20 CV 2160, 2020 WL 5630465 (N.D. Ill. Sept. 21, 2020), *reconsideration denied*, No. 20 CV 2160, 2021 WL 83758 (N.D. Ill. Jan. 10, 2021). Another Judge memorably held that "coronavirus damages lungs. It does not damage printing presses." *Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*, 1:20-cv-03311-VEC (S.D.N.Y. 2020). A Northern District of Georgia Judge held, the presence of COVID-19 particles on the Plaintiff's property, without more, does not constitute a "'direct physical loss or damage to' the property. Routine cleaning performed

---

[2] *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615-CIV, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020) (specifically noting Plaintiff made no such allegation)

[3] For the moment, I am putting aside the issue of whether Plaintiff's "virtual certainty" argument even meets the 12(b)(6) standard. See Case No. 1:20-cv-02181-WMR.

11

with greater frequency and care eliminates the virus on surfaces." *K D Unlimited Inc. v. Owners Ins. Co.*, No. 1:20-CV-2163-TWT, 2021 WL 81660 (N.D. Ga. Jan. 5, 2021).

Ultimately, the Eleventh Circuit's holding in *Mama Jo's Inc. v. Sparta Insurance Co.*, 823 F. App'x 868 (11th Cir. 2020) will control here. This case was cited above for the holding that economic losses are not direct physical losses, but the Eleventh Circuit also held in that case that debris from a nearby construction cite which had interfered with restaurant operations was not a direct physical loss because "under Florida law, an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both "direct" and "physical." *Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868 (11th Cir. 2020).

The Plaintiff tries to distinguish *Mama Jo's* in several ways. First, and most obviously, it argues that the coronavirus is not construction dust. Second, it argues that the case was decided at the summary judgment stage and the principle holding was about the lack of evidence, not the interpretation of the insurance policy as a matter of law. The Court understands the Plaintiff's objections, but they fall flat here. The Court should take the Eleventh Circuit's opinion at face value. It clearly states that cleaning is not a direct physical loss and does not couch that language in uncertain terms. Additionally, that case has been cited in almost every single COVID-19 insurance litigation case decided in the S.D. Fla. has cited *Mama Jo's*.

Lastly, the deadly coronavirus is surely an order of magnitude more dangerous than construction debris. However, to the extent this argument is about the danger each poses while resting on surfaces, they are both eliminated in the same way—with Lysol and a rag. At this point in the pandemic, it is widely accepted that life can go on with hand sanitizer and disinfecting wipes. Indeed, Town Kitchen has continued to operate a take-out business from the very premise they argue has suffered direct physical loss. The Eleventh Circuit's holding in Mama Jo's did not rely

on the danger or harmlessness of the debris at issue, it relied on what needs to be done to "repair" the problem. Because the "repairs" here consist of the routine disinfecting with which we are all familiar and cleaning costs are not tangible, physical losses but rather economic losses, the Court rejects the Plaintiff's "physical contamination" theory—and ultimately **dismiss** its complaint for failure to state a claim for breach of contract and a declaratory judgment.

### C. Civil Authority Coverage

The Civil Authority coverage provision requires a "Covered Cause of Loss" that causes damage to property other than the property at the described premises. Put simply, for the reasons discussed above, the **Plaintiff does not allege such a covered cause of loss**, either at their premises or any other property. *See* also *El Novillo Rest. v. Certain Underwriters at Lloyd's, London*, No. 1:20-CV-21525-UU, 2020 WL 7251362 (S.D. Fla. Dec. 7, 2020) (finding the same); *Raymond H. Nahmad DDS PA v. Hartford Cas. Ins. Co.*, No. 20-CV-22833, 2020 WL 6392841 (S.D. Fla. Nov. 2, 2020) (finding the same).

### D. The Pollutant Exclusion

The Parties also brief the issue of whether, if the Plaintiff did make a prima facie case of coverage, the coronavirus would fall within the Policy's pollutant exclusion. The Court need not address this issue because no prima facie case was made.

### E. Conclusion

The Court dismisses the Plaintiff's breach of contract claim and declaratory judgment claim because the complaint fails to allege that the Defendant improperly denied its insurance claim. Business closure due to the spread of COVID-19 nor the potential presence of the virus physically at the restaurant is "direct physical loss of or damage to" the premises. The harm from COVID-19 stems from having living, breathing human beings inside one's business—it is not

damage done to the physical business itself, it is damage done to other living, breathing human beings. To the extent it *is* a physical harm, such as COVID-19 particles present on surfaces in the restaurant, those can be easily cleaned.

DONE AND ORDERED in Chambers at Miami, Florida, this 26 of February 2021.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record